**THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **DEREK CURTIS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:04cv409** |
| | ) | |
| **SUZANNE DEVLIN, et al.,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This is a 42 U.S.C. § 1983 action for false arrest, false imprisonment and malicious prosecution and at issue are two motions for summary judgment filed by the remaining defendants in the case. Pursuant to *Roseboro v. Garrison*, 528 F.2d 304 (4th Cir. 1975), the *pro se* plaintiff has been provided an adequate opportunity to respond to the issues raised in defendants' motions for summary judgment and the matter is now ripe for disposition on the current record.[1] Oral argument is dispensed with because the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process.

---

[1] By Order dated January 3, 2005, plaintiff's motion for an extension of time until January 17, 2005, to file a response to defendants' motions for summary judgment was granted and his simultaneous request for the appointment of counsel was denied. *See Curtis v. Devlin, et al.*, 1:04cv409 (E.D. Va. Jan. 3, 2005) (Order). Thereafter, on January 21, 2005, plaintiff submitted the first five pages of his response to defendants' motions for summary judgment, without any supporting documents, affidavits or other admissible evidence attached thereto. In an accompanying letter sent with this partial response, plaintiff indicated that the second portion of his response had been mailed to the Clerk's Office in a separate envelope. Yet, the Clerk's Office never received the second portion of plaintiff's response. Thus, by Order dated February 15, 2005, plaintiff was given until March 1, 2005, to re-submit the second portion of his response to defendants' motions for summary judgment, or the entire response if he wished. *See Curtis v. Devlin, et al.*, 1:04cv409 (E. D. Va. Feb. 15, 2005) (Order). More than a month and a half has passed since the March 1, 2005 extended response deadline and no additional pleadings have been filed by the plaintiff in this case.

**I.**[2]

The record reflects that on July 29, 2002, *pro se* plaintiff Derek Curtis, a black male, entered into a one-month vehicle rental agreement with the Cherner Lincoln Mercury Dealership located in Annandale, Virginia. On that date, plaintiff (i) appeared at the dealership in person, (ii) completed and signed Rental Agreement number 67771, and (iii) departed the dealership in possession of a 2003 Mercury Grand Marquis, VIN 2MEHM75W63X616741, as well as the pink copy of the Rental Agreement, which was to serve as his temporary registration during the course of the rental period. Under the terms of the Rental Agreement, payment for the vehicle was to be made at the end of the one-month rental term by the Office of Strategical Systems & Management (OSSM), plaintiff's alleged employer.

At the conclusion of the one-month rental term, on August 28, 2002, plaintiff returned to the dealership with the 2003 Mercury Grand Marquis to request a one-month extension of the rental period. The dealership approved plaintiff's request in this regard and thus, while at the dealership on this occasion, plaintiff signed a second Rental Agreement — number 67977 — extending the original rental term for an additional month. As before, the terms of the second Rental Agreement provided that payment for the vehicle was to be made at the end of the rental period by OSSM, plaintiff's purported employer. Plaintiff was again provided with the pink copy of the second Rental Agreement to serve as his temporary registration during the additional rental period, and he then left the dealership in possession of the same rental vehicle.

Plaintiff failed to return the Mercury Grand Marquis to the dealership by September 27, 2002,

[2] The facts recited here are derived from the amended complaint, defendants' motions for summary judgment and supporting documentation, and plaintiff's partial response to defendants' motions for summary judgment and, unless otherwise noted, are undisputed in this record.

in accordance with the terms of the second Rental Agreement. The record is also devoid of any evidence that plaintiff was granted authorization by the dealership, either express or implied, to maintain possession of the rental vehicle beyond that date. In this regard, although the dealership generated additional rental records for the subject vehicle in the following months, these additional records were prepared merely for in-house accounting purposes to keep track of the subject vehicle; they were never executed by plaintiff, a requirement for a valid rental.

Given plaintiff's failure to return the rental vehicle in accordance with the terms of the second Rental Agreement, defendant John Klingler, a dealership manager, reviewed the relevant rental documents to determine plaintiff's contact information. In doing so, Klingler discovered that plaintiff had provided the dealership with (i) several different addresses, (ii) several different named employers, (iii) several named associates, and (iv) six different telephone numbers, one of which turned out to be disconnected. Using this contact information, representatives from the dealership sought unsuccessfully to reach plaintiff by telephone throughout October 2002, leaving multiple telephone messages at the numbers provided. For example, Tom Crawford, the Rental Manager for the dealership, left three telephone messages for plaintiff on October 25, 2002. A few days later, on October 28, 2002, Crawford left another telephone message for plaintiff demanding the immediate return of the rental vehicle and $8,640 in certified funds, the amount then due under the terms of the Rental Agreements.

In late October 2002, presumably in response to the numerous telephone inquiries and demands left for plaintiff, the dealership received a check in the amount of $8,640 drawn on an account at AllFirst Bank in the name of the Office of Healthcare Systems and Management (OHSM). The dealership promptly deposited the $8,640 check into its own bank account on October 29, 2002,

but the check was subsequently returned for insufficient funds on November 9, 2002.

Upon learning of the returned check, Klingler sent a facsimile to one of plaintiff's named associates — Mr. Lipscomb — to alert plaintiff as to the situation. Shortly thereafter, on November 13, 2002, another of plaintiff's putative associates — Ms. Dean — called the dealership on plaintiff's behalf to advise that certified funds would soon be provided for the rental vehicle. Approximately a week later, on November 21, 2002, Klingler received a facsimile from OHSM displaying a copy of a certified check that had been issued by AllFirst Bank on that date in the amount of $8,640. Ms. Dean also called the dealership on November 21, 2002, to advise that the actual certified check had been left with a security guard at 733 15th Street, N.W. in the District of Columbia, a shared office suite. Crawford retrieved the certified check at the identified location at 1:15 p.m. on November 21, 2002. Yet, later that afternoon, a representative from AllFirst called Klingler to advise the dealership that the certified check had been purchased with fraudulent funds and thus would not be honored.

The following day, November 22, 2002, Crawford and Klingler retrieved a duplicate set of keys for the 2003 Mercury Grand Marquis and attempted unsuccessfully to locate and recover the rental vehicle themselves. Given the severity of the situation, employees of the dealership also contacted defendant Jonathan Cherner, an owner of the Cherner Automotive Group, to alert him to the dishonored checks and the missing rental vehicle. Cherner subsequently sought the advice of counsel, Philip Collins of the law firm Protas, Spivok & Collins, LLC, who then sent a written response to AllFirst on December 5, 2002, demanding that the bank honor its certified check.

On the advice of counsel, Cherner also instructed Crawford to file a police report regarding the incident, as Collins had advised Cherner that plaintiff had likely committed a crime. In accordance with this instruction, Crawford contacted the Fairfax County Police Mason District on

December 2, 2002. Shortly thereafter, Officer J. P. Palenscar from the Fairfax County Police Department arrived at the dealership to take the initial police report from Crawford. Before leaving the dealership, Officer Palenscar advised Crawford that he would later be contacted by the detective assigned to investigate the case. As it happens, this turned out to be Detective James Reid from the Financial Crimes Section of the Criminal Investigations Bureau of the Fairfax County Police Department.

After Detective Reid was assigned to the case in accordance with standard Department procedures, he promptly contacted Crawford about the missing rental vehicle.[3] Indeed, between December 3 and December 5, 2002, Reid had several phone conversations with Crawford in the course of which Crawford reported, *inter alia*, (i) that plaintiff had rented a vehicle from the dealership, (ii) that plaintiff had not returned the vehicle to the dealership in accordance with the terms of the Rental Agreements, (iii) that plaintiff had not paid for the rental vehicle, and (iv) that plaintiff had tendered two separate checks to the dealership in the amount of $8,640, both of which had been dishonored, one for insufficient funds and the second for having been fraudulently obtained.

Upon hearing these allegations, Detective Reid requested that Crawford provide him with copies of the pertinent rental and financial documents, which Crawford later did by facsimile on December 4, 2002. Detective Reid also suggested that Crawford send a 15-day demand letter to

---

[3] Throughout the course of the investigation, Crawford was Detective Reid's sole point of contact at the dealership; Detective Reid never communicated with either defendant Cherner or defendant Klingler about the instant case or any other matter. Instead, Cherner and Klingler communicated only with Officer Palenscar regarding the instant investigation. For example, the record reflects that Cherner spoke with Officer Palenscar by telephone on several occasions and sent him a facsimile on December 6, 2002, advising Officer Palenscar of the various work, cellular and home telephone numbers and addresses that the dealership had on file for plaintiff.

plaintiff via certified mail. Additionally, after speaking with Crawford, Detective Reid ran a search of plaintiff's criminal history, which revealed numerous arrests and convictions for fraud-type offenses.

On December 9, 2002, Crawford sent plaintiff a certified demand letter, as suggested by Detective Reid, demanding the immediate return of the rental vehicle. The demand letter also indicated that in the event the vehicle was not returned within 15 days, the dealership would seek prosecution for plaintiff's failure to return the vehicle in accordance with the Rental Agreements, as well as payment for all rental charges and expenses incurred by the dealership. The record reflects that the certified demand letter was never picked up; rather, it was returned to the dealership by the Post Office as unclaimed.

Three days later, on December 12, 2002, the dealership received a telephone call from an unidentified woman reporting that the rental vehicle was located in the vicinity of P and Half Streets in Southeast Washington, D.C. Crawford immediately traveled to the identified location and found the vehicle abandoned and disabled with a broken windshield and a dead battery, requiring the vehicle to be towed back to the dealership by ATS Towing.[4] Crawford promptly advised Detective Reid that the dealership had recovered the missing rental vehicle. Detective Reid, in response, informed Crawford that he would nonetheless continue to investigate the matter, as the recovery of the vehicle was immaterial to the commission of certain criminal offenses.

In the course of the subsequent criminal investigation, Detective Reid contacted LaTrenda Hall, an employee of AllFirst, who advised Detective Reid of the following facts: (i) that plaintiff

[4] Around this same time, in mid-December 2002, AllFirst Bank honored the $8,640 certified check that it had issued on November 21, 2002, presumably in response to the demand letter sent by counsel on behalf of the dealership.

opened an account with AllFirst in the name of OHSM on October 23, 2002, with an initial deposit of $100, (ii) that plaintiff falsely represented to AllFirst that he was a doctor at the time he opened the account, (iii) that plaintiff wrote a $8,640 check to the dealership from this account on October 25, 2002, which check was later returned for insufficient funds, (iv) that plaintiff deposited a check for $29,500 into the AllFirst account on November 19, 2002, (v) that plaintiff requested and obtained from AllFirst a certified cashier's check in the amount of $8,640 payable to the dealership on November 22, 2002, and (vi) that AllFirst put a stop-payment on the certified check when it discovered that the $29,500 check that had been deposited into the account on November 19, 2002, came from a stolen checkbook.[5]  Detective Reid then requested that AllFirst provide the Police Department with video surveillance of all relevant financial transactions involving the plaintiff in this case.  Hall, however, was unable to locate any video recordings of the relevant transactions.

On July 14, 2003, Detective Reid met with Assistant Commonwealth Attorney Ian Rodway to advise him of all of the material facts of the case, including the fact that the rental vehicle had been recovered by the dealership.  In the circumstances, Attorney Rodway advised Detective Reid that the most appropriate charge against plaintiff would be a charge of failure to return a vehicle, in violation of Va. Code § 18.2-117.  Attorney Rodway also directed Detective Reid to seek a warrant against plaintiff for this particular offense.[6]

Pursuant to Attorney Rodway's instructions, Detective Reid spoke with Roberta Matisoff,

---

[5]  In this regard, Detective Reid eventually discovered that the $29,500 check originated from a checkbook that had been stolen from the vehicle of Anthony Sakyi when his vehicle had been parked on a street near plaintiff's residence in Alexandria, Virginia.  Detective Reid later contacted Mr. Sakyi, who agreed to appear as a witness against plaintiff if necessary.

[6]  Detective Reid determined not to pursue a charge of identity theft against plaintiff as he concluded that the video surveillance was crucial to proving such a charge.

a state magistrate, on July 14, 2003. In the course of the conversation, Detective Reid informed the magistrate of the material facts of the case and, on the basis of the facts presented, the magistrate issued a warrant against plaintiff for failure to return rental property, in violation of Va. Code § 18.2-117. This warrant was placed on file at the Fairfax County Police Warrant Control Desk and a note was attached to the file to page Detective Reid when the warrant was served.

Plaintiff was eventually arrested on the outstanding warrant at 9:45 p.m. on October 21, 2003, but Detective Reid was not notified of plaintiff's arrest. Plaintiff thereafter posted bond and was released from police custody shortly after 2:00 a.m. on October 22, 2003, approximately four hours after his arrest. An "Information on Attorney" hearing was scheduled in the matter for November 13, 2003, and a preliminary hearing was set for December 23, 2003. Yet, when plaintiff failed to appear at the November 13, 2003 hearing, his bond was revoked and a bench warrant was issued for his arrest. He was thereafter arrested, and presumably incarcerated, on the bench warrant on December 19, 2003, shortly before the December 23, 2003 preliminary hearing.

Neither Reid nor anyone from the dealership was notified in advance of the preliminary hearing. Instead, on December 23, 2003, Detective Reid received a page from Assistant Commonwealth Attorney Julie Mitchell from the courthouse where the preliminary hearing was scheduled to take place. Detective Reid promptly responded to the page, but was unable to reach the courthouse before Attorney Mitchell had nolle prossed the § 18.2-117 charge against plaintiff. Plaintiff was nonetheless convicted of failure to appear at the November 13, 2003 hearing and was thus sentenced to serve two days in prison.

Following the December 23, 2003 hearing, Attorney Mitchell advised Detective Reid to check on the availability of the witnesses and, if appropriate, to request another warrant against

plaintiff for a violation of Va. Code § 18.2-117. Detective Reid thus contacted Crawford at the dealership, who advised Detective Reid that although the dealership had decided not to pursue a civil action against plaintiff,[7] it would still be willing to participate in any related criminal proceedings. Yet, because a crucial prosecution witness was no longer employed by the dealership and could not be contacted — namely the employee who had originally dealt with plaintiff on the first and second Rental Agreements — Detective Reid ultimately decided not to seek another warrant against plaintiff for the § 18.2-117 offense.

On April 8, 2004, *pro se* plaintiff Derek Curtis[8] initiated the instant action by filing a complaint in this District alleging, *inter alia*, a malicious prosecution claim against (i) Robert Horan and John Murray, prosecutors with the Commonwealth Attorney's Office for Fairfax County; (ii) Suzanne Devlin, the Acting Chief of Police for the Fairfax County Police Department, and (iii) Cherner and Klingler from the dealership. By Order dated June 4, 2004, a motion to dismiss filed by defendants Horan and Murray was granted and plaintiff's complaint was accordingly dismissed with prejudice as to these particular defendants on immunity grounds.[9] *See Curtis v. Horan, et al.,*

---

[7] Specifically, the dealership determined that it made no business sense to pursue a civil action against plaintiff as such litigation was not likely to result in a recovery of more than it would cost to pursue the litigation.

[8] It appears from the record that plaintiff is currently incarcerated without bond in the Fairfax Adult Detention Center, having pled guilty on June 22, 2004, to two charges of obtaining money under false pretenses. It also appears that Prince George's County has lodged a detainer with Fairfax County authorities related to additional criminal charges against plaintiff.

[9] *See, e.g., Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993) (recognizing that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity"); *Imbler v. Patchman*, 424 U.S. 409, 428-29431 (1976) (recognizing that prosecutors are immune from a civil suit for damages under § 1983 in initiating a prosecution and in presenting the State's case).

Civil Action No. 1:04cv409 (E.D. Va. June 4, 2004) (Order). Also by Order dated June 4, 2004, plaintiff was granted leave until June 14, 2004, to file an amended complaint against all defendants except Horan and Murray in accordance with the requirements of the Federal Rules of Civil Procedure. *See id.*

Plaintiff filed a timely amended complaint on June 14, 2004, again naming Devlin, Klingler and Cherner as defendants, and adding as additional defendants (i) Detective Reid, (ii) Jerry Kilgore, the Attorney General for the Commonwealth of Virginia, (iii) Anthony Griffin, a Fairfax County Executive, (iv) Robert Sisson, the Fairfax City Manager, and (v) two unidentified John Does, one from the Fairfax County Police Department and the other from the dealership. In the amended complaint, plaintiff essentially alleged that the defendants conspired with one another to deprive him of his civil rights when they subjected him to false arrest, illegal imprisonment and malicious prosecution because of their "hatred of African Americans."

By Order dated October 26, 2004, the amended complaint was dismissed against defendants Devlin, Griffin, Kilgore, Sisson and the two unidentified John Does. *See Curtis v. Devlin, et al.*, 1:04cv409 (E.D. Va. Oct. 26, 2004) (Order). Defendant Devlin, in particular, was dismissed on the ground that the allegations of the amended complaint do not meet the heavy burden applicable to § 1983 supervisory liability claims.[10] Defendant Griffin, in turn, was dismissed on the ground that he

---

[10] Because of the limited and specific nature of liability imposed on supervisory officials, a plaintiff "assumes a heavy burden of proof in supervisory liability cases." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). Specifically, a plaintiff must prove not only that he was confronted with "a pervasive and unreasonable risk of harm from some specified source," but also that "the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Id.* (citations omitted); *see also Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999) (stating that "[a] plaintiff must show actual or constructive knowledge of a risk of constitutional injury, [and] deliberate indifference to that risk"). A plaintiff must also show "an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Carter*, 164 F.3d at 221 (internal quotation marks omitted) (citing *Shaw*

had no knowledge of the events in question and because liability under 42 U.S.C. § 1983 cannot be premised solely on the theory of respondeat superior. *See Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999). Finally, defendants Kilgore, Sisson and the two unidentified John Doe defendants were dismissed pursuant to Rule 4(m), Fed. R. Civ. P., based on plaintiff's failure to serve these individuals within 120 days of the filing of the amended complaint.

The matter was thus allowed to proceed only insofar as the amended complaint purported to state a § 1983 Fourth Amendment claim against Detective Reid, together with private citizens Cherner and Klingler, based on false arrest, false imprisonment and malicious prosecution. *See id.* These remaining defendants subsequently filed the two motions for summary judgment that are currently at issue and ripe for disposition. Detective Reid, in his respective motion, essentially contends (i) that he is entitled to qualified immunity on plaintiff's § 1983 claim, (ii) that probable cause existed for plaintiff's arrest and prosecution, and (iii) that plaintiff has failed to produce any evidence of a conspiracy or racial animus on the part of the defendants. Defendants Cherner and Klingler likewise argue, *inter alia*, (i) that there was probable cause to support the defendants' actions in this case, and (ii) that there is no evidence of a conspiracy between the three remaining defendants or of any racial animus in this case.

**II.**

The summary judgment standard is well-established and does not require extensive discussion. In essence, on a motion for summary judgment, the moving party must demonstrate that

---

*v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). And, importantly, a plaintiff cannot satisfy this heavy burden by identifying a single or isolated incident, as a "supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Id.* Nor can a supervisor "be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.*

"there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. The facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the non-moving party. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Rule 56, Fed. R. Civ. P.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.**

Analysis properly begins with the question whether Detective Reid may claim the benefit of the doctrine of qualified immunity. In this regard, it is clear that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rogers v. Pendleton*, 249 F.3d 279, 285 (4th Cir. 2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A two-step inquiry is used to determine whether an individual is entitled to qualified immunity and thus shielded from liability under § 1983, namely (i) whether the facts alleged reflect the deprivation of an actual constitutional right and, if so, (ii) whether that constitutional right was clearly established at the time of the alleged violation. *See Burrell v. Virginia*, 395 F.3d 508, 512 (4th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001)). Significantly, qualified immunity "is not lost when an officer violates the Fourth Amendment unless a reasonable officer would know that the specific conduct at issue was impermissible." *Rogers*, 249 F.3d at 285.

Here, plaintiff's sole remaining claim against Detective Reid — a government official

entitled to qualified immunity in appropriate circumstances — is a § 1983 claim premised on theories of false arrest, false imprisonment and malicious prosecution. Section 1983 "is not itself a source of substantive rights, but a method for vindicating *federal* rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 (1979). Given this settled principle, the Fourth Circuit has recognized that "there is no such thing as a '§ 1983 malicious prosecution' claim." *Lambert v. William*, 223 F.3d 257, 262 (4th Cir. 2000). Instead, the appropriate § 1983 claim in this context is "a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution — specifically, the requirement that the prior proceeding terminate favorably to the plaintiff." *Id.* (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)).[11] Likewise, § 1983 actions premised on alleged false arrest and/or false imprisonment claims are also analyzed as unreasonable seizures under the Fourth Amendment. *See, e.g., Brown v. Gilmore*, 278 F.3d 362 (4th Cir. 2002) (recognizing that a plaintiff alleging a § 1983 false arrest claim needs to show that the officer decided to arrest him without probable cause to establish an unreasonable seizure under the Fourth Amendment).

To demonstrate a deprivation of a constitutional right in this case, as required in the first step of the qualified immunity analysis, there must be a lack of probable cause for plaintiff's arrest,

---

[11] To state a common law claim of malicious prosecution, a plaintiff must generally allege (1) the initiation or maintenance of a proceeding against the plaintiff by the defendant; (2) termination of that proceeding favorable to the plaintiff; (3) lack of probable cause to support that proceeding; and (4) the defendant's malice. *See Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (citation omitted). Thus, although it is clearly an element of the common law claim of malicious prosecution, malice is "not an element of the § 1983 claim since the reasonableness of a seizure under Fourth Amendment jurisprudence 'should be analyzed from an objective perspective.'" *Lambert*, 223 F.3d at 262 n.2 (quoting *Brooks*, 85 F.3d at 184 n.5).

imprisonment and subsequent prosecution on the charge of failure to return a rental vehicle in violation of Va. Code § 18.2-117. Indeed, "[o]nly where...[a] warrant application is so lacking in indicia of probable cause as to render the official belief in its existence unreasonable will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335 (1986). In this regard, for probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed by an individual; evidence sufficient to convict that individual of the charged offense is not required. *See Wong Sun v. United States*, 371 U.S. 471 (1963). Moreover, "[w]hether probable cause exists in a particular situation...always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). Thus, "[i]f a person is arrested when no reasonable officer could believe, in light of the contours of the offense at issue, that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues." *Rogers*, 249 F.3d at 290 (citing *Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1996)).

Given these settled principles, the specific question presented here is whether the record facts reflect the existence of probable cause for plaintiff's arrest, imprisonment and subsequent prosecution on the charge of failure to return a rental vehicle, in violation of Va. Code § 18.2-117. That Virginia statute provides as follows:

> If any person comes into the possession as bailee of any animal, aircraft, vehicle, boat or vessel, and fails to return the same to the bailor, in accordance with the bailment agreement, he shall be deemed guilty of larceny thereof and receive the same punishment, according to the value of the thing stolen, prescribed for the punishment of the larceny of goods and chattels. The failure to return to the bailor such animal, aircraft, vehicle, boat or vessel, within five days from the time the bailee has agreed in writing to return the same

> shall be prima facie evidence of larceny by such bailee of such animal, aircraft, vehicle, boat or vessel.

Va. Code § 18.2-117.

Here, even a cursory review of the record evidence supports a finding of probable cause as to this particular offense. Indeed, plaintiff signed a one-month rental agreement for a 2003 Mercury Grand Marquis on July 29, 2002. He then returned to the dealership with the vehicle on August 28, 2002, and executed a second Rental Agreement extending the rental term for an additional month. Yet, plaintiff failed to return the rental vehicle to the dealership by September 27, 2002, in accordance with the terms of the second Rental Agreement. And, although the vehicle was eventually recovered by the dealership in December 2002, plaintiff never personally returned the vehicle to the dealership. In fact, plaintiff has actually stipulated that he has "no personal knowledge of who returned the 2003 Mercury Grand Marquis...back to Cherner Lincoln Mercury Rentals after the vehicle broke down." These facts alone, regardless of the additional allegations concerning the two dishonored AllFirst checks, are sufficient to constitute probable cause that plaintiff committed a violation of Va. Code § 18.2-117. Indeed, plaintiff's failure to return the rental vehicle within five days of September 27, 2002 — the date set forth in the governing Rental Agreements — is *prima facie* evidence of such a violation under the terms of the statute. *See* Va. Code § 18.2-117. Defendant Reid thus had probable cause to swear out the warrant to the state magistrate in this case and, contrary to plaintiff's unsupported allegations, there is absolutely no evidence that Detective Reid either lied to or withheld material facts from the magistrate in requesting the warrant.[12] For the

---

[12] *See Franks v. Delaware*, 438 U.S. 154 (holding that to establish a Fourth Amendment violation during the warrant process, an individual must make a substantial showing that an affiant for an arrest warrant knowingly, intentionally, or recklessly included a false statement and that "the allegedly false statement [wa]s necessary to the finding of probable cause").

same reasons, probable cause likewise existed to support plaintiff's arrest, brief incarceration and subsequent prosecution for this offense.[13]

Accordingly, because the record facts do not establish the deprivation of any actual constitutional rights, either under the Fourth Amendment or otherwise, Detective Reid necessarily prevails on the first prong in the qualified immunity analysis. *See Burrell*, 395 F.3d at 512 (requiring a showing of the deprivation of an actual constitutional right). Because of this, it is unnecessary to consider the second step in the qualified immunity analysis, namely whether the constitutional right at issue was clearly established at the time of the alleged violation.[14] In sum, Detective Reid is clearly entitled to qualified immunity in this instance and thus shielded from liability on plaintiff's § 1983 claim.

**IV.**

Plaintiff's § 1983 claim against defendants Cherner and Klingler likewise fails, although their status as private citizens requires additional analysis. To begin with, it is clear that § 1983 liability is imposed only for deprivations of constitutional rights carried out "under color of law." *See Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 341 (4th Cir. 2000) (citations omitted). And, "[in] cases construing section 1983, 'under color' of law has been treated consistently

---

[13] It should be noted that the Fourth Circuit has suggested that "a claim for false arrest may be considered only when no arrest warrant has been obtained." *See Porterfield v. Lott*, 156 F.3d 562, 568 (4th Cir. 1998). Here, Detective Reid sought and obtained a facially-valid arrest warrant from a state magistrate prior to plaintiff's arrest. *See Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996) (holding that "a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant. At most, such an official can be pursued through a cause of action for malicious prosecution").

[14] Even so, it is clear that the Fourth Amendment right to be free from arrest and prosecution without probable cause was clearly established at the time Detective Reid engaged in the disputed actions in this case. Yet, Detective Reid is nonetheless entitled to qualified immunity given that no deprivations of any actual constitutional rights occurred in this instance. *See supra*.

as equivalent to the 'state action' requirement under the Fourteenth Amendment." *Id. (quoting Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 215 (4th Cir.1993)). Nonetheless, the Supreme Court has recognized that "to act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Instead, "[i]t is enough that he is a willful participant in joint action with the State or its agents." *Id.* Given this, the Supreme Court has held that "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." *Id.* at 27-28 (citations omitted).

Here, plaintiff alleges that defendants Cherner and Klingler conspired with Detective Reid to deprive him of his civil rights under the Fourth Amendment because of their mutual "hatred of African Americans." Yet, contrary to plaintiff's contentions in this regard, there is no record evidence that either Cherner or Klingler were "jointly engaged" with Detective Reid in this case. Indeed, the record reflects that Detective Reid never communicated with either defendant Cherner or defendant Klingler in the course of the instant investigation, either about this case or any other matter; rather, Crawford was Detective Reid's sole point of contact at the dealership. Moreover, plaintiff readily admits that he "is not certain of the dates and times defendants met to complete and/or carry out the different phases of this elaborate conspiracy." Amended Complaint ¶ 16. Nor is there any evidence of any racial animus on the part of any of the defendants in this case, despite plaintiff's conclusory and wholly unsupported allegations to the contrary. And finally, even assuming the record facts were sufficient to establish that Cherner and Klinger were somehow "jointly engaged" with Detective Reid in this case, this would not change the fact that ample probable cause existed to support plaintiff's arrest, incarceration and subsequent prosecution for the

charge of failure to return a rental vehicle under Va. Code § 18.2-117, thus barring any viable Fourth Amendment claim against defendants Cherner and Klingler under § 1983 in this case.

**V.**

Accordingly, for the foregoing reasons, the remaining defendants' motions for summary judgment must be granted and plaintiff's amended complaint against defendants Reid, Cherner and Klingler must be dismissed with prejudice.

An appropriate Order will issue.

/s/

T. S. Ellis, III
United States District Judge

Alexandria, VA
April 19, 2005